IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 4:04CR3088 |
| Plaintiff, | ) | |
| | ) | |
| vs | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| FRANCISCO REYES-RIVERA, | ) | |
| | ) | |
| Defendant. | ) | |

Francisco Reyes-Rivera (Rivera) has filed a "response" (filing 84) which deals with his quest for the return of bail money. I will treat that "response" as a motion and deny it. More importantly, he has also filed a motion (filing 83) to vacate his sentence under 28 U.S.C. § 2255. After submitting that pro se pleading to initial review, I will also deny that submission. My reasons for these decisions are set forth below.

## *I. The Bail Money*

Rivera has been convicted and sentenced for his involvement in a drug crime. He was originally charged in the Hamilton County, Nebraska District Court, but then federal authorities took over the case and prosecuted it in federal court.

After he was sentenced, he filed a pro se motion for release of bond money. (Filing 81.) I reviewed the motion, noted that no money had been deposited with this court, and denied the motion. (Filing 82.)

In a "response" to that decision Reyes indicates that the Hamilton County, Nebraska police department apparently holds the money he seeks. Rivera "trusts that this problem will be resolved, and "if needed, tha[t] he will contact the Hamilton County Police Dept." (Filing 84.)

To avoid any confusion, I will treat Rivera's "response" as a motion and I will deny it. That said, I have confirmed, again, that our Clerk holds no money belonging to Rivera. Furthermore, Rivera is free to contact the authorities in Hamilton County, Nebraska in order to seek the return of any money he may have posted with those authorities as security for his appearance. Moreover, the Hamilton County, Nebraska authorities are at liberty to return any such monies to Rivera.

## *II. The 2255 Motion*

I am required to conduct an initial review of Rivera's 2255 motion.[1] Having conducted that review, it plainly appears that Rivera is not entitled to relief and his motion must be denied.

## *A. Background*

In the summer of 2004, Rivera was driving a car with about a pound of almost pure methamphetamine. He was stopped by the Nebraska Highway Patrol after trying to avoid what he thought was a "State Patrol Checkpoint."[2] (Filing 26 at 3-6 (Report

---

[1] Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts provides:

> The judge who receives the motion must promptly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

[2] This was a ruse designed to catch drug traffickers who use Interstate 80 in Nebraska to transport drugs. The patrol set out signs indicating that as motorists proceeded along I-80 they were about encounter a checkpoint with a "drug dog."

and Recommendation on Motion to Suppress).)    Rivera gave written consent to search the vehicle (in Spanish), and, after the drugs were found, Rivera was vigorously questioned and he made incriminating statements.  (Filing 26 at 6-9.)

Rivera was initially charged with possession with intent to distribute 500 grams or more of a mixture or substance containing methamphetamine.  (Filing 1.)  This charge carried a prison sentence of at least 10 years in prison with a maximum sentence of life in prison.

Subsequently, a grand jury returned a superseding indictment charging Rivera with possession with intent to distribute 50 grams or more of actual methamphetamine.  (Filing 13.)  Like the earlier charge, this one carried a prison sentence of at least 10 years in prison with a maximum sentence of life in prison.

John Vanderslice, a very experienced Assistant Federal Public Defender, was appointed to represent Rivera.  Vanderslice filed a motion to suppress the drugs and Rivera's incriminating statements.  Magistrate Judge Piester heard evidence, and then recommended that I deny the suppression motion as to the drugs, but grant the motion as to the incriminating statements that Rivera made after having been administered his <u>Miranda</u> rights.  (Filing 26 at 14.)   I adopted the recommendation, denied the motion to suppress as to the drugs, and granted the motion to suppress as to the statements.  (Filing 31.)

---

The authorities then watched to see if vehicles tried to avoid the "checkpoint" by turning off early and taking a remote rural exit where there were no services of any kind.  If, after passing the signs notifying motorists of the oncoming "checkpoint," a vehicle exited I-80, the state troopers would watch carefully for a traffic violation.  If (but only if) a traffic violation was observed, a state trooper would stop the car.  After passing the "checkpoint" signs, Rivera exited I-80, rolled past a stop sign, and was stopped by a trooper.   Rivera, who was driving a car with Iowa license plates, was given a warning for the traffic infraction.  Rivera and the trooper then engaged in a conversation.  And, as they say, "the rest is history."

After the motion to suppress was resolved, Rivera then decided to enter a plea of guilty. On March 17, 2005, he appeared before Judge Piester and entered his plea.[3] (Filing 39 (Minutes).)   As a part of that process, he signed a plea agreement (filing 41) and a petition to enter a plea of guilty.[4] (Filing 40.)   In the petition, Rivera admitted that:

> On June 26, 2004, I possessed a little less than 1 pound of methamphetamine. The lab report shows [approximately] 437 grams at 94% purity.  I was transporting the meth for someone else who was supposed to give me $700.00 for making the trip.  I knew the illegal drugs were in my vehicle when I was stopped by the Nebraska State Patrol on June 26.  I am  very sorry.
>
> (Filing 40 at 12 ¶ 47.)

Among other things, the plea agreement provided that Rivera was entitled to a  reduction of two levels for his minor role in the offense.  (Filing 41 at 2 ¶ 3(b).) The government agreed to this reduction despite the fact that Rivera had, at one point, admitted that the drugs were his alone.  (Filing 26 at 8.)[5]   As noted earlier, I had suppressed those statements because of a <u>Miranda</u> violation.

---

[3]Throughout the proceedings, Rivera had the services of a court interpreter. The Federal Public Defender's office also employees a full-time staff interpreter.

[4]The petition to enter a plea of guilty was in English and Spanish.  In addition, and among other things, the Federal Public Defender's interpreter certified in the petition to enter a plea of guilty that he had provided the defendant with a translation of the superseding indictment, the petition to enter a plea of guilty, the plea agreement and parts of the Sentencing Guidelines.  (Filing 40 at 16.)

[5]He later retracted this admission, and told the trooper that he had gotten the drugs "from a white man in Denver."  (Filing 26 at 8.)

The parties also agreed that Rivera "waive[d] [his] right to appeal to the Eighth Circuit Court of Appeals any aspect of this case, including, but not limited to, the adverse decision on defendant's Motion to Suppress . . . ." (Filing 41 at 2 ¶ 3(b).) [6] The parties also agreed that Rivera was responsible for at least 150 grams but not more than 500 grams of actual methamphetamine. (Filing 41 at 3 ¶ 9.)

Both the agreement regarding the two-level reduction, and the drug quantity stipulation were made pursuant to the binding provisions of Rule 11(c)(1)(C). Thus, if I accepted the plea agreement (as I later did), I was bound to follow these two provisions of the agreement at sentencing.

An extensive inquiry into the defendant's plea of guilty and the related plea agreement was conducted by Judge Piester. (E.g., Filing 31 (31 page transcript) (hereinafter "Tr.").)  Rivera was arraigned, again, on the superseding indictment and informed that he faced a penalty of "not less than 10 years to [no] more than life" in prison. (Filing 31, Tr. at 3.)  Rivera advised Judge Piester that he understood the nature of the charges and the penalties. (Filing 31, Tr. 4.)

---

[6]Despite the broad nature of this waiver, it doubtful that it precludes Rivera from bringing this 2255 motion at least insofar his claim relates to ineffective assistance of counsel. See DeRoo v. United States, 223 F.3d 919, 924 (8th Cir.2000) (defendant's guilty plea, which stated that defendant waived any right to appeal judgment and sentence, or to contest the conviction or sentence through motion to vacate, did not bar motion to vacate in which defendant alleged that his counsel's failure to file a motion to dismiss the indictment, among other errors, induced him to plead guilty, and that but for counsel's errors he would have proceeded to trial, and thus at least facially claimed that, as result of ineffective assistance, his decision to enter into the plea agreement and waive his appeal rights was not knowing and voluntary.)

He had earlier been arraigned on the superseding indictment on October 28, 2004. (Filing 20 (minutes).) At no time did Rivera or Vanderslice challenge the superseding indictment.

At the plea hearing, and among other things, the lawyers told Judge Piester they had arrived at a reduced base offense level of 30 and that base offense level was "set and capped" as a result of the stipulated role reduction.[7] (Filing 31, Tr. 21.) In particular, the government said it agreed to this provision "in part due to the defendant's agreement to waive his rights to appeal to the Eighth Circuit." (Filing 31, Tr. 21.) Shortly after that statement was made, Judge Piester asked Rivera whether he had heard and agreed with the "main points" of the plea agreement as recounted by the lawyers. (Filing 31, Tr. 22.) Rivera responded, "Yes." (Filing 31, Tr. 22.)

Judge Piester specifically asked whether Rivera understood and agreed that he was waiving his right to appeal "in any way to the Court of Appeals." (Filing 31, Tr. 23.) Rivera responded, "Yes, I do agree." (Filing 31, Tr. 23.)

When asked by Judge Piester to give the factual basis for the plea of guilty, counsel for the government said that hidden in the vehicle that the defendant was driving was a substance stored in a plastic container, that laboratory tests revealed that the container held 437.86 grams of a substance containing methamphetamine and that the purity of the drug was approximately 94 percent. (Filing 31, Tr. 26.) Judge Piester asked the defendant whether that information was true, and the defendant said, "Yes." (Filing 31, Tr. 27.) When questioned further by Judge Piester, Rivera admitted that he knew he was transporting methamphetamine, that he knew it was illegal to do so, and that he intended to deliver the drug to another person at the conclusion of the trip. (Filing 31, Tr. 27-28.)

---

[7] See U.S.S.G. § 2D1.1(a)(3) (2004 Manual).

I accepted the plea.  (Filing 46.)  Following my normal practice, however, I deferred acceptance of the plea agreement until the time of sentencing.

Thereafter, the probation officer conducted a thorough presentence investigation and provided the defendant, the lawyers and the undersigned with a report of that investigation.  (Filing 61 (PSR).)   The officer found that the base offense level was 34 (411 grams of "actual" methamphetamine), and that Rivera was entitled to a 3-point reduction for acceptance of responsibility.  (Filing 61, PSR at 8 ¶¶ 33 & 39.)   Thus, the total offense level was 31.  (Filing 61, PSR at 8 ¶ 40.)  Rivera was placed in criminal history category III.  (Filing 61, PSR at 10 ¶ 50.)  This meant that the Guidelines imprisonment range was 135 to 168 months.  (Filing 61, PSR at 16 ¶ 78.)

Unlike the parties in their plea agreement, the probation officer did not agree that Rivera was entitled to a two-level role reduction.  Rather, the probation officer stated: "The parties agreed to a 2 level reduction pursuant to U.S.S.G. § 3B1.2; however, this officer does not find that reduction is appropriate."  (Filing 61, PSR at 8 ¶ 39.)  Accordingly, Vanderslice objected (filing 47) and I set the objection for hearing at the sentencing proceeding.  (Filing 48.)

On June 17, 2005, I conducted a sentencing hearing.  (E.g., Filing 70 (18 page transcript) (hereinafter "Tr.").)   Before I decided whether to accept the plea agreement, I resolved Vanderslice's objection regarding the lack of a role reduction.

Vanderslice offered the defendant's statement to authorities about being a "mule," the government represented that it had independently determined that Rivera was a farm worker prior to the trip in question, and the government further indicated that it had determined that the vehicle was registered to another person.  (Filing 70, Tr. 3-5.)   As a result, the government thought the defendant was entitled to the role

reduction, and so did I.  I therefore sustained Vanderslice's objection and then accepted the plea agreement.  (Filing 70, Tr. 5.)[8]

As a result of this ruling, the Guidelines calculation changed.   Because the base offense level was "capped" at 30 and because the defendant was entitled to a role reduction of 2 points, when acceptance of responsibility was considered, the total offense level became 25.  (Filing 70, Tr. 8.)   With a criminal history category of III, the advisory Guidelines range for imprisonment purposes became 70 to 87 months.  (Filing 70, Tr. 8.)  However, because Rivera had possessed far more than 50 grams of actual methamphetamine with intent to deliver, the statutory minimum sentence of 120 months became operative and "trumped" the Guidelines.  (Filing 70, Tr. 8.)[9]

I imposed a prison sentence of 120 months.  (Filing 70, Tr. 13.)   After clarifying that Rivera was bound by whatever appeal waiver his plea agreement imposed, I advised the defendant of his general right to appeal. (Filing 70, Tr. 15-18.) Because Rivera had pled guilty to the superseding indictment, the original indictment was dismissed.  (Filing 70, Tr. 18.)

Despite the appeal waiver, Rivera instructed Vanderslice to file a notice of appeal and he did.  (Filing 63.)   Pursuant to <u>Anders v. California,</u>[10] Vanderslice prepared and filed a brief and requested leave to withdraw. (Filing 78 at 1 (Court of Appeals' opinion).)

---

[8] I also corrected an ambiguity in the PSR to indicate that the substance at issue was actual methamphetamine rather than a mixture or substance containing methamphetamine.  (Filing 70, Tr. 6.)

[9] U.S.S.G. § 5G1.1(b) (2004) (providing that where the statutory minimum sentence is greater than the maximum sentence called for by the Guidelines, the statutory minimum sentence becomes the Guidelines sentence).

[10] 386 U.S. 738 (1967).

Noting that the defendant's appeal waiver was valid, the Court of Appeals reviewed the record and found no legitimate issues that were not covered by the appeal waiver. (Filing 78 at 2.) Accordingly, and on May 23, 2006, the Court of Appeals dismissed the appeal and allowed Vanderslice to withdraw. (Filing 78 at 2.)

On September 13, 2006, Rivera filed his 2255 motion. (Filing 82.) The motion is now ready for review.

### B. *Analysis*

Rivera has filed an abstruse motion. The main document is 29 pages long and it is filled with gibberish. Attached are 103 pages of documents. Except for one, all of the arguments are frivolous and require no further discussion.

The one legitimate, although weak, argument advanced by Rivera is that Vanderslice rendered ineffective assistance of counsel. As best I understand this claim, Rivera thinks Vanderslice was ineffective because (1) the lawyer failed to challenged the superseding indictment charging "actual" methamphetamine, and (2) the lawyer allowed Rivera to execute an appeal waiver as a part of the plea agreement.

In order to prevail on his claim that his counsel rendered ineffective assistance of counsel, Rivera must show that "'counsel's representation fell below an objective standard of reasonableness'"[11] and that "'there is a reasonable probability that, but for

---

[11] "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland v. Washington, 466 U.S. 668, 687 & 698-99 674 (1984). In considering whether this showing has been accomplished, "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689. In other words, a judge should seek to "eliminate the distorting effects of hindsight" by examining counsel's

counsel's unprofessional errors, the result of the proceeding would have been different.'" Nguyen v. United States, 114 F.3d 699, 703-04 (8th Cir.1997) (quoting Strickland v. Washington, 466 U.S. 668, 688, 694 (1984)). An evidentiary hearing is unnecessary if the movant makes an insufficient preliminary showing on either or both prongs. Engelen v. United States, 68 F.3d 238, 240 (8th Cir.1995) (affirming denial of § 2255 motion without a hearing in the face of an ineffective assistance of counsel claim; stating that no evidentiary hearing is required where "(1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact").

Rivera has made an insufficient preliminary showing of both prongs of his claim. That is, Rivera has failed to show that Vanderslice's representation fell below the standard and Rivera has failed to show that he was prejudiced by Vanderslice's representation. On the contrary, the record conclusively establishes that Vanderslice did an excellent job.

### *The Superseding Indictment*

Rivera asserts that Vanderslice did not challenge the superseding indictment that altered the charge from one involving 500 grams or more of "mixture or substance" containing methamphetamine to a charge involving 50 grams or more of "actual" methamphetamine. While this is true, it is also meaningless.

I have carefully reviewed the superseding indictment and the facts of this case, and conclude that a motion challenging the superseding indictment would have been a waste of time. Where there is no reasonable possibility that a motion challenging the sufficiency of an indictment would have been granted, there is no ineffective

---

performance from counsel's perspective at the time of the alleged error." Id.

assistance of counsel. See, e.g., Deroo, 223 F.3d at 925 (affirming denial of 2255 motion without an evidentiary hearing, but remanding for resentencing; alleged ineffective assistance of counsel in failing to move to dismiss indictment was not prejudicial because there was no reasonable possibility that it would have been granted). That said, there are three things worthy of mention regarding the superseding indictment.

First, it is apparent that the government would never have been able to prove that Rivera possessed 500 grams or more of a mixture or substance containing methamphetamine because the lab report came back finding the total quantity of the substance was 437.86 grams with a purity of 94 percent. (Filing 31, Tr. 26) In other words, the government clearly could not prove the requisite quantity to trigger the statutory minimum sentence of 10 years if the controlled substance was characterized as being part of a mixture. See 21 U.S.C. § 841(b)(1)(viii). But the same statute also allowed the government to invoke the statutory minimum sentence of 10 years by alleging and proving 50 grams or more of actual methamphetamine. Id. Since the law does not hold the government to one indictment, see, e.g., United States v. Mendenhall, 597 F.2d 639, 641(8th Cir.) ("[A] prosecutor is normally free to dismiss one indictment and bring another based on further development of his case."), cert. denied, 444 U.S. 855 (1979), and because the undisputed facts show that Rivera possessed far more than 50 grams of actual methamphetamine (94% of 437.86 grams=411.58 grams), the government was perfectly within its rights to seek and obtain another indictment.

Second, for sentencing purposes, it did not matter whether the drug was labeled a "mixture" containing methamphetamine or "actual" methamphetamine. Under the advisory Guidelines, I was required to take the characterization of the methamphetamine that resulted in the highest base offense level. See U.S.S.G. § 2D1.1 *Notes to Drug Quantity Table (B) (2004) ("In the case of a mixture or substance containing . . . methamphetamine, use the offense level determined by the

-11-

entire weight of the mixture or substance, or the offense level determined by the weight of the . . . methamphetamine (actual), whichever is greater.") ; United States v. Beltran, 122 F. 3d 1156, 1159 (8th Cir. 1997) ("Specifically, the Drug Quantity Table of the Sentencing Guidelines directs the sentencing court to use the method which results in the greatest offense level[.]"). Thus, no matter what the indictment alleged, at sentencing, I was required to concentrate on "actual" methamphetamine because that method resulted in the higher base offense level.[12] A motion challenging the indictment would not have changed this approach.

Third, the superseding indictment, filed in September of 2004, alleged the statutory threshold of 50 grams or more. (Filing 13.) It also contained an allegation entitled "Further Factual Finding" asserting that Rivera "possessed with intent to distribute at least 150 grams of methamphetamine (actual)." (Filing 13.) This supplemental allegation (some quantity over 50 grams) was unnecessary under Booker.[13] Since the Guidelines have been held to be only advisory, the law does not require the government to allege this level of factual detail in an indictment. Nonetheless, because this language is harmless surplusage, Vanderslice had no basis upon which to challenge the indictment and Rivera can show no harm for Vanderslice failing to do so. See, e.g., United States v. Sherman, 440 F.3d 982, 986 (8th Cir. 2006) (Stating that: "It is now clear, under the advisory guidelines scheme announced in Booker, that allegations concerning adjustments under the sentencing guidelines need not be included in an indictment or submitted to a jury. United States v. Haack, 403 F.3d 997, 1003 (8th Cir.2005). Accordingly, we analyze the inclusion of these

---

[12]The base offense level for 437.86 grams of a mixture containing methamphetamine was 30, while the base offense level for 411 grams of actual methamphetamine was 34. U.S.S.G. § 2D1.1(c) (Drug Quantity Table) (2004).

[13]United States v. Booker, 543 U.S. 220, 249-258 (2005) (as pertinent here, holding that the Sixth Amendment requirement that a jury find certain sentencing facts was incompatible with Federal Sentencing Act).

matters in the indictment as surplusage, United States v. Bates, 77 F.3d 1101, 1105 (8th Cir.1996), and we will find error only if the surplusage is prejudicial and the district court abused its discretion in failing to strike it. United States v. Washington, 992 F.2d 785, 787-788 (8th Cir.1993).").

### *The Appeal Waiver*

Rivera gave up his right to appeal. This waiver specifically gave up Rivera's right to challenge the decision of Judge Piester and myself to deny the motion to suppress the drugs. On the other hand, Rivera received an agreement from the government that it would support a 2-level reduction in his offense level for being a minor player. Given the fact that the probation officer opposed the 2-level reduction, the government's concession was very important to reducing Rivera's sentencing exposure. Indeed, the net result of this deal was that Rivera's sentence was at least 15 months less than it probably would have been had the deal not been struck. [14]

Since Rivera was closely questioned about this waiver when entering his plea of guilty, since Rivera clearly understood what he was doing as indicated by his responses to that questioning, and since Rivera undisputably received a significant benefit from the bargain, Rivera cannot show that Vanderslice's conduct in advising Rivera to give up his appeal rights to get a sentence reduction was unreasonable. See, e.g., Chesney v. United States, 367 F.3d 1055, 1059 (8th Cir. 2004) (affirming denial of 2255 motion; holding that defense counsel was not ineffective in recommending agreement to defendant convicted for drug conspiracy, under which defendant waived his right to appeal sentence or file post-sentencing pleadings in exchange for certain sentencing concessions).

---

[14] The low end of the base offense level without the role adjustment was 135 months. The low end of the advisory Guidelines in this case (given the statutory minimum sentence) was 120 months and I imposed that sentence.

Nor has Rivera made any showing that the appeal waiver prejudiced him. The only remotely arguable issue that Rivera might have raised on appeal dealt with the denial of his suppression motion on the legality of the stop and search. There is simply no reason to think that this decision was wrong and there is no reason to believe that Rivera would have been successful on appeal had he sought to rehash that question.[15] Thus, the appeal waiver cost him nothing of substance.

### *III. Conclusion*

We hold no money belonging to Rivera. Rivera's 2255 motion plainly lacks merit. Accordingly,

IT IS ORDERED that:

1. Treated as a motion, the defendant's "response" (filing 84) is denied.

2. The defendant's motion to vacate under 28 U.S.C. § 2255 (83) is denied with prejudice. A separate judgment will be entered.

October 23, 2006.                           BY THE COURT:

                                            *s/Richard G. Kopf*
                                            United States District Judge

---

[15] Judge Piester conducted an evidentiary hearing and wrote a 14-page report and recommendation carefully examining the legality of the stop and search and he concluded that the stop and search were valid. (Filing 26.) I subjected Judge Piester's opinion to de novo review and came to the same conclusion. (Filing 31.)